UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re: | ) | Case No. 6:20-bk-6461-LVV |
| | ) | |
| T & C Downtown Development, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**MOTION FOR AUTHORITY TO USE CASH COLLATERAL
PURSUANT TO 11 U.S.C. § 363 *NUNC PRO TUNC* TO NOVEMBER 22, 2020
AND REQUEST FOR EXPEDITED/EMERGENCY HEARING**

The Debtor, T & C Downtown Development, LLC (hereinafter "Debtor" or "T&C"), by and through its undersigned counsel, hereby files its Motion for Authority to Use Cash Collateral Pursuant to 11 U.S.C. § 363, *nunc pro tunc* to November 22, 2020, and in support thereof, respectfully states as follows:

**JURISDICTION**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for the relief requested in this Motion is 11 U.S.C. §§ 105 and 363 and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure.

**BACKGROUND**

3. On November 22, 2020, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date"). Pursuant to Bankruptcy Code §§ 1108 and 1184, the Debtor is operating its business and managing its affairs as a debtor in

1

possession. As of the date hereof, no trustee, examiner, or statutory committee has been appointed in this Chapter 11 case.

4. The Debtor is a Florida limited liability company, formed on January 20, 2017, that owns real property located at 532 W. Church Street, Orlando, Florida 32805, as well as operates a restaurant and night club/lounge. The restaurant and lounge operate out of the building owned by the Debtor.

5. The Debtor assets consist of the real property, furniture, kitchen equipment, bar equipment, and limited office equipment.

## IDENTIFICATION OF SECURED CREDITORS

6. Clayton Gregg Wilson, as Trustee of the Clayton Gregg Wilson Revocable Trust dated March 4, 2008, as amended ("Wilson") holds a first mortgage lien on the real property owned by the Debtor as well as a blanket lien on all of the Debtor's assets via a UCC-1 Financing Statement with the Florida Secured Transaction Registry on October 15, 2018, Document Number 201806771045. This lien arises out of a pre-petition loan made to the Debtor. As of the Petition Date, the outstanding balance owed to Wilson was approximately $1,842,792.16.

7. The U.S. Small Business Administration (the "SBA") has a lien on the Debtor's assets pursuant to a UCC-1 Financing Statement recorded with the Florida Secured Transaction Registry on September 7, 2020, Document Number 202004619684. This lien arises out of a pre-petition Paycheck Protection Program loan made to the Debtor through SunTrust Bank. As of the Petition Date, the outstanding principal balance owed on the PPP loan was $425,000.00.

**RELIEF REQUESTED**

8. By this Motion, the Debtor seeks the entry of an Order authorizing the use of cash collateral pursuant to 11 U.S.C. § 363 and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure; setting an expedited hearing on this Motion; and granting any such further relief that this Court deems just and proper.

9. As set forth in the budget, incorporated herein and attached hereto as Exhibit "A" (the "Budget"), the Debtor requires the use of cash collateral to fund all necessary operating expenses of the Debtor's business.

10. The Debtor will suffer immediate and irreparable harm if it is not authorized to use cash collateral to fund the expenses set forth in the Budget. Absent such authorization, the Debtor will not be able to maintain and protect the business assets and operations.

11. The Debtor acknowledges that Wilson and the SBA/SunTrust have a lien on the cash collateral in accordance with 11 U.S.C. §§ 361 and 363. In connection therewith, the Debtor seeks the use of cash collateral in the ordinary course of business.

**CASH COLLATERAL AND THE RELIEF SOUGHT BY THE DEBTOR**

12. The Debtor's use of property of the estate is governed by section 363 of the Bankruptcy Code, which provides that:

> If the business of the debtor is authorized to be operated under section … 1108 … of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1). A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363 of the Bankruptcy Code. See 11 U.S.C. § 1107(a).

13. When a Chapter 11 debtor-in-possession is authorized to operate its business, it may use property of the estate in the ordinary course of business, but is prohibited from using cash collateral absent consent of the secured creditor or court authorization. *In re Kahn*, 86 B.R. 506 (Bankr. W.D. Mich. 1988); *In re Westport-Sandpiper Associates Ltd. P'Ship*, 116 B.R. 355 (Bankr. D. Conn. 1990)(debtor may not use cash collateral unless entity that has interest in it consents or debtor proves that interest of the entity is adequately protected).

14. "Cash collateral" is defined by the Bankruptcy Code as, "cash, negotiable instruments, documents of title securities, deposit accounts or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest . . ." 11 U.S.C. § 363(a). Any cash collateral generated by the Debtor may constitute the cash collateral of the alleged secured creditors.

15. Further, the Debtor proposes to use the cash collateral in accordance with the terms of the Budget. The Debtor also requests that it be authorized: (i) to exceed any line item on the budget by an amount up to ten (10) percent of each such line item; or (ii) to exceed any line item by more than ten (10) percent so long as the total of all amounts in excess of all line items for the Budget do not exceed ten (10) percent in the aggregate of the aggregate total budget.

## **APPLICABLE AUTHORITY FOR RELIEF REQUESTED**

**A.     The Court Should Enter an Order Authorizing the Use of Cash Collateral Because the Debtor is Providing the Secured Creditors with Adequate Protection.**

16.     The Bankruptcy Code does not define "adequate protection" but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditors' interest in such property.  See 11 U.S.C. § 361.

17.     Adequate protection is to be determined on a case-by-case factual analysis.  *See Mbank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985).  For example, in *O'Connor*, the court held that "[i]n order to encourage the debtors' efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard." *O'Connor*, 808 F.2d at 1936 (citations omitted).  *See also In re Quality Interiors, Inc.*, 127 B.R. 391 (Bankr. N.D. Ohio 1991) (holding that the granting of a replacement lien provided adequate protection).

18.     Adequate protection is meant to ensure that the secured creditors receive the value for which it originally bargained pre-bankruptcy. *Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3rd Cir. 1994) citing *In re O'Connor*, 808 F.2d 1393, 1396-1397 (10th Cir. 1987).  Courts have noted that the essence of adequate protection is the assurance of the maintenance and continued responsibility of the lien value during the interim between the filing and the confirmation. *In re Arrienes*, 25 B.R. 79, 81 (Bankr. D. Or. 1982).  The purpose of the adequate protection requirement is to protect secured creditors from diminution of value during the use period. *See In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *In re Becker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

19. In the instant case, adequate protection provided to Wilson and the SBA/SunTrust includes a lien on the Debtor's receivables and the Debtor's projected positive cash flow.

20. Section 361(2) of the Bankruptcy Code expressly provides that the granting of a replacement lien constitutes a means of providing adequate protection. In the instant case, granting Wilson and the SBA/SunTrust Bank a replacement lien on the post-petition collateral to the extent that its prepetition collateral is diminished by the Debtor's use of cash collateral, provides Wilson and the SBA/SunTrust Bank with adequate protection. *See e.g., O'Connor*, 808 F.2d 1393; *In re Coody*, 59 B.R. 164, 167 (Bankr. M.D. Ga. 1986); *In re Dixie-Shamrock Oil & Gas, Inc.*, 39 B.R. 115, 118 (Bankr. M.D. Tenn. 1984).

**B.   The Use of Cash Collateral Will Preserve the Debtor's Going Concern Value and Will Inure to the Benefit of the Secured Creditors.**

21. The continued operation of the Debtor's business is the only manner in which it can successfully reorganize. The Debtor's revenue source is from the operation of a restaurant and bar, which requires the ongoing purchase of food and liquor, payment of employee wages, as well as for advertising and promotion. The Debtor requires use of the constant cash flow in order to fund its operations. If the Debtor is not allowed to use cash collateral, it will be unable to operate and will certainly result in harm to the Debtor.

22. The Debtor will use the cash collateral during the interim cash collateral period to purchase food and liquor, pay utilities, pay employee wages, marketing and advertising, pay sales tax, pay payroll taxes, as well as the normal expenses of day-to-day operation.

23. It is well established that a bankruptcy court, where possible, should resolve issues in favor of preserving the business of the debtor as a going concern.

> A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use cash collateral in its effort to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities etc., the congressional policy favoring rehabilitation over economic failure would be frustrated.

*In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984).

24. Accordingly, courts authorize the use of cash collateral to enhance or preserve the debtor's going concern value. For example, in *In re Stein*, 19 B.R. 458 (Bankr. E.D. Pa. 1982), the Court allowed a debtor to use cash collateral where the secured party was undersecured, finding that the use of cash collateral was necessary to the debtors' continued operations and the creditor's secured position can only be enhanced by the continued operation of the debtor's business. *Id.* at 460; *see also In re Dynaco Corp*, 162 B.R. 389, 395-396 (Bankr. D. N.H. 1983) (finding that the alternative to the debtor's use of cash collateral, termination of its business, would doom reorganization and any chance to maximize value for all creditors); *In re Karl A. Neise, Inc.*, 156 B.R. 600, 602 (Bankr. S.D. Fla. 1981) (marginally secured creditor adequately protected by lien on post-petition property acquired by debtor, debtors can use cash collateral in the normal operation of their business).

25. If the Debtor cannot use cash collateral, it will be forced to cease operations. By contrast, granting authority will allow the Debtor to maintain operations and preserve the going concern value of its business which will inure to the benefit of any secured creditors and all other creditors.

26. The Debtor believes that use of cash collateral pursuant to the terms and conditions set forth above is fair and reasonable and adequately protects the secured creditors in this case. The combination of: (i) the Debtor's ability to preserve the going concern value

of the business with the use of cash collateral; and (ii) providing the secured creditors with the other protections set forth herein, adequately protects its alleged secured position under Sections 361(2) and 361(3) of the Bankruptcy Code.

27. The Debtor believes that the approval of this Motion is in the best interest of the Debtor, its creditors and its estate because it will enable the Debtor to (i) continue the orderly operation of its business and avoid an immediate total shutdown of operations; (ii) meet its obligations for necessary ordinary course expenditures, and other operating expenses; and (iii) make payments authorized under other orders entered by this Court, thereby avoiding immediate and irreparable harm to the Debtor's estate.

## Request for Relief *Nunc Pro Tunc* to Petition Date

28. The Debtor is seeking authority to use cash collateral *nunc pro tunc* to the Petition Date.

29. The use of cash collateral, or lack thereof, by the Debtor, for even one day, would likely cause a collapse of the business.

30. The Debtor operates a restaurant and bar, which requires the daily purchase food and liquor, among other recurring expenses.

31. A lack of supplies would have required the Debtor to cease all operations.

32. Out of pure survival, the Debtor has been required to use cash collateral, even absent court order, to preserve the business as a going concern.

33. It is in the best interest of the creditors to grant relief *nunc pro tunc* to the Petition Date. Since the Debtor does not have any assets to liquidate, the creditors' only chance of being paid is if the Debtor operates without cessation.

WHEREFORE, the Debtor respectfully requests that this Court enter an order (a) authorizing the Debtor's use of cash collateral in accordance with the attached Budget and provide related adequate protection *nunc pro tunc* to November 22, 2020; (b) granting the replacement liens of Wilson and the SBA/SunTrust Bank set forth above in connection with the use thereof; and (c) granting such other and further relief that this Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via CM/ECF and/or U.S. Mail, first class and postage prepaid, to all Parties-In-Interest listed on the attached Mailing Matrix, this 5th day of January, 2021.

> */s/ Aldo G. Bartolone, Jr.*
> ALDO G. BARTOLONE, JR.
> Florida Bar No. 173134
> BARTOLONE LAW, PLLC
> 1030 N. Orange Ave., Suite 300
> Orlando, Florida 32801
> Telephone: (407) 294-4440
> Facsimile: (407) 287-5544
> E-mail: aldo@bartolonelaw.com
> *Attorneys for Debtor*

**EXHIBIT "A"**

**Cash Collateral Budget
for
T & C Downtown Development, LLC**

| | |
|---|---|
| GROSS MONTHLY REVENUE: | $48,569.89 |
| MONTHLY EXPENSES: | |
| Bar Supplies: | $752.33 |
| Chef: | $5,682.46 |
| Liquor: | $2,955.22 |
| Merchant Account Fees: | $1,262.76 |
| Restaurant Supplies: | $8,254.69 |
| Advertising/Promotion: | $2,304.33 |
| Automobile Expense: | $5.68 |
| Bank Service Charges: | $256.00 |
| Cable & Internet: | $593.89 |
| Construction: | $1,198.33 |
| Entertainment: | $330.56 |
| Gas: | $160.12 |
| Insurance: | $199.00 |
| Linens: | $601.63 |
| Office Supplies: | $208.92 |
| Payroll: | $8,479.37 |
| Payroll Taxes: | $3,876.98 |
| Payroll Service Fees: | $296.21 |
| Tips to Servers: | $319.67 |
| Pest Control: | $148.27 |
| Repairs/Maintenance: | $399.19 |
| Subscriptions: | $9.99 |
| Travel: | $238.09 |
| Utilities: | $956.94 |
| NET MONTHLY INCOME: | $9,079.26 |

```
Label Matrix for local noticing          Clayton G. Wilson as Trustee of the Clayton    T & C Downtown Development, LLC
113A-6                                   c/o Matthew J. Vaughn                          534 W. Church Street
Case 6:20-bk-06461-LVV                   Post Office Box 24628                          Orlando, FL 32805-2206
Middle District of Florida               Lakeland, FL 33802-4628
Orlando
Tue Jan  5 14:17:18 EST 2021

BB&T now Truist                          BB&T now Truist                                BB&T now Truist
Attn: Ivonne Otero-Hoebbel               P.O. Box 200                                   P.O. Box 580340
255 S. Orange Avenue                     Wilson, NC 27894-0200                          Charlotte, NC 28258-0340
Suite 112
Orlando, FL 32801-3457


BB&T now Truist, Bankruptcy Section      C2 General Contracting, Inc.                   Casey Preston
100-50-01-51                             1205 Sarah Avenue                              7107 Udine Avenue
P.O. box 1847                            Suite 101                                      Orlando, FL 32819-8446
Wilson, NC 27894-1847                    Longwood, FL 32750-5476



Clayton G Wilson as Trustee              Clayton G. Wilson, as Trustee of The Clayton   Clayton G. Wilson, as Trustee of the Clayton
Clayton Wilson Rev. Trust                c/o Matthew J. Vaughn, esq                     c/o Matthew J. Vaughn
21299 US Highway 27                      Post Office Box 24628                          Post Office Box 24628
Lake Wales, FL 33859-6851                Lakeland, FL  33802-4628                       Lakeland, Florida 33802-4628



Entelechy ARC Corporation                Florida Department of Revenue                  Florida Dept. of Revenue
595 Pensacola Lane                       Bankruptcy Unit                                Orlando Service Center
Lake Mary, FL 32746-5132                 Post Office Box 6668                           400 W. Robinson Street
                                         Tallahassee FL 32314-6668                      Suite N302
                                                                                        Orlando, FL 32801-1759


Internal Revenue Service                 Nancy J. Gargula, United States Trustee        Orange County Tax Collector
Post Office Box 7346                     c/o Bryan Edgar Buenaventura, esq              PO Box 545100
Philadelphia PA 19101-7346               George C. Young Federal Building400 W. W       Orlando FL 32854-5100
                                         Orlando, FL 32801



(p)PAWNEE LEASING CORPORATION ATTN  SANDI CAR   Pawnee Leasing Corporation              Peterson & Myers P.A.
3801 AUTOMATION WAY                      c/o Solove Law Firm, P.A.                     225 East Lemon Street
STE 207                                  12002 SW 128th Court, Suite 201                Suite 300
FORT COLLINS CO 80525-5735               Miami, FL 33186-4643                           Lakeland, FL 33801-4627



Randy Bumbalough                         Rexel USA, Inc.                                Smith & Williams Trial Group
595 Pensacola Lane                       14951 Dallas Parkway                           2295 S. Hiawassee Road
Lake Mary, FL 32746-5132                 Dallas, TX 75254-7892                          Suite 318
                                                                                        Orlando, FL 32835-8747



Solove Law Firm P.A.                     T & C Downtown Development, LLC                Trevor Myers
12002 SW 128th Court                     KC Preston co-owner                            86 Shipyard Ct.
Suite 201                                The Orlando Law Group, PL                      Ocoee, FL 34761-4323
Miami, FL 33186-4643                     12301 Lake Underhill Rd. Suite 213
                                         Orlando, Florida 32828-4511



United States Trustee - ORL              Vend Lease                                     Aldo G Bartolone Jr
Office of the United States Trustee      8100 Sandpiper Circle                          Bartolone Law, PLLC
George C Young Federal Building          Suite 300                                      1030 North Orange Avenue, Suite 300
400 West Washington Street, Suite 1100   Baltimore, MD 21236-4992                       Orlando, FL 32801-1004
Orlando, FL 32801-2210
```

```
KC Preston                            L. Todd Budgen
The Orlando Law Group                 Budgen Law
12301 Lake Underhill Rd. Suite 213    Post Office Box 520546
Orlando, FL 32828-4511                Longwood, FL 32752-0546
```

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

```
Pawnee Leasing Corporation
3801 Automation Way
Suite 207
Fort Collins, CO 80525
```

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(d)Orange County Tax Collector       (d)Orange County Tax Collector        End of Label Matrix
P.O. Box 545100                       P.O. Box 545100                       Mailable recipients   31
Orlando, FL 32854-5100                Orlando, FL 32854-5100                Bypassed recipients    2
                                                                            Total                 33
```